# Stocks *v.* Young.

*Bill to Redeem Lands Sold under Deed of Trust.*

| 67 | 341 |
| 93 | 190 |
| 93 | 324 |
| 67 | 341 |
| 99 | 118 |
| 67 | 341 |
| 101 | 698 |
| 67 | 341 |
| 112 | 465 |
| 67 | 341 |
| 119 | 634 |
| 67 | 341 |
| 129 | 599 |
| 67 | 341 |
| c132 | 167 |
| 132 | 168 |

1. *Bill to redeem; necessary averment in.*—A court of equity will not enforce the statutory right of redemption in lands sold under a power in a deed of trust, when the bill fails to aver that the complainant, before it was filed, tendered the amount of the purchaser's bid, with ten per cent. per annum thereon, and demanded redemption.

2. *Delivery of possession, a condition precedent to the statutory right of redemption.*—It is a condition precedent to the statutory right of redemption, that the debtor shall have delivered possession to the purchaser within ten days after the sale; and a bill which fails to aver distinctly that this provision of the statute has been complied with, is without equity.

3. *Creditor; purchase of at sale of property under trust deed valid.*—A sale of lands under a power contained in a deed of trust to secure creditors, is not voidable at the mere election of the debtor, no fraud, unfairness or inadequacy of price being shown, merely because a creditor became the purchaser.

APPEAL from Cherokee Chancery Court.
Heard before Hon. H. C. SPEAKE.

This was a bill in equity, filed on the 27th of February, 1880, by Henry Young, against John T., and Wm. H. Stocks, and Wm. McElrath. The bill stated that on February 8th, 1876, Henry Young executed a deed of trust on certain lands, which are described, to secure a debt due to W. H. Stocks, amounting to $2,204, which was evidenced by two promissory notes, one due December 25, 1876, the other due December 25, 1877; that W. H. Stocks was the beneficiary in said deed, and his brother, John T. Stocks, was appointed thereby, as trustee, to sell the lands in case of default in the payment of the notes at their maturity, and that the deed contained a power of sale to be exercised by said J. T. Stocks. The notes were not paid at maturity, and on March 4, 1878, the trustee sold under the deed, which was in the usual form, and W. H. Stocks became the purchaser of the lands, at the sum of $2,500, which was at that time the face value of the

notes, in which was included usurious interest calculated on the notes at sixteen per cent. per annum from their maturity; that said sum was more than was legally due to Stocks, but none of it had ever been paid back to complainant; that at the time of the sale the trustee executed a deed to W. H. Stocks, conveying the property to him, in which was recited the payment of the purchase-money; that said W. H. Stocks entered satisfaction of the mortgage on the records of the Probate Court of Cherokee county, and immediately entered into possession of them; that he held possession of them up to the time of a sale by him to John T. Stocks, and received the rents and profits; that at the time of the execution of the notes to Stocks, complainant did not owe him the amount named in the notes; that this amount was made up of compound and usurious interest; that the debt originated in a land trade between W. H. Stocks and himself; that complainant was an illiterate man, and had the utmost confidence in W. H. and J. T. Stocks; that J. T. Stocks made all the calculations as to the amount due on the notes; that the property in 1872 was worth $11,000; that on April 20, 1879, W. H. Stocks sold the lands in controversy to John T. Stocks, who sold them on April 23, 1879, to Wm. H. McElrath, who was in possession of them when the bill was filed; that complainant was ready, and willing, and able to pay W. H. Stocks the actual amount legitimately due him on said notes, with legal interest thereon, together with 10 per cent. on the amount that the court should decide he must pay in order to redeem the property, and submitted himself to the jurisdiction of the court. The bill made the same tender and offer as J. T. Stocks, and Wm. McElrath, and prayed that the sale under the trust deed be vacated, that an account be taken of the actual amount due the beneficiary in said deed of trust; that an account be also taken of the amount received, or which might have been received, by him, or his vendees, and the sum credited on the deed of trust. But if the sale should not be set aside, that complainant be allowed to come and redeem. The defendants demurred to the bill, assigning as grounds of demurrer, among others, that the bill failed to show that the complainant delivered the possession of the land to the purchaser within ten days after the sale. The Chancellor overruled the demurrer. The answers of the defendants admitted the execution of the deed of trust, the sale to W. H. Stocks under it, the conveyance to him, and his canveyance to J. T. Stocks, and the sale by the latter to McElrath; averred that the sale was fairly conducted, that there was no fraud, and that the property was not worth $11,000, but brought its full value at the sale; admitted that

[Stocks v. Young.]

defendant received 12½ per cent. on the notes as interest after their maturity. The testimony established the facts set up in the answer. The Chancellor rendered a decree vacating the sale under the trust deed, directed the Register to take an account of the rents received by the defendants. The rendition of this decree, as well as the decree overruling the demurrer, is assigned as error.

CLOPTON, HERBERT & CHAMBERS, for appellants.

DENSON & DISQUE, for appellee.—The court did not err in overruling the demurrer. When it was shown that the beneficiary in the deed of trust became the purchaser at the sale by the trustee, it became the duty of the court to set aside the sale, and no injury need be alleged or shown to effect this. *Robinson v. Cullom*, 41 Ala. 693 ; *Charles v. DuBose*, 29 Ala. 367 ; *Frazer, Ex'r, v. Lee*, 42 Ala. 25. A beneficiary, under a deed of trust, cannot purchase at his own sale.—*Wade's Heirs v. Harper*, 3 Yerger, 383. The grantor in the deed had a right to redeem.—2 Jones on Mort. 1876; *Rutherford v. Williams*, 42 Md. 33-34. The bill is framed with this view.

BRICKELL, C. J.—1. The objects of the bill are, to vacate the sale of the lands made under the trust deed, because the creditor for whose security it was made was the purchaser, and to let in the grantor to redeem, on taking an account of the debt, excluding usury, which, it is averred, entered into it, and charging the creditor with rents while he and his vendee were in possession ; or, if that relief cannot be obtained, to let the grantor in to redeem under the statute. We do not now intend considering whether a bill in equity presenting such alterations can be supported, for it is plain that as a bill for statutory redemption, this bill is wholly insufficient and without equity. There is no averment that before filing the bill the complainant made a tender of the amount of the purchaser's bid, with ten per cent. per annum thereon, and demanded redemption. Nor is there any distinct averment that within ten days after the sale under the trust deed, possession of the premises was surrendered to the purchaser. The purchaser, or his vendee, were not in default, unless a tender of the amount of the bid, with ten per cent. interest thereon, had been made, and a court of equity will not (unless circumstances exist which will excuse the tender), intervene to compel the redemption.—*Spoor v. Phillips*, 27 Ala. 193 ; *Moore v. Lynn*, 35 Ala. 701. The statute makes it a condition precedent to the redemption, that the debtor must within ten days have delivered possession of

the premises to the purchaser. Unless the condition is performed, or the debtor remains in possession by the consent of the purchaser, the right of redemption does not accrue. *Sanford v. Ochtalomi*, 23 Ala. 669; *Paulling v. Meade, Ib.* 505.

2. There was no irregularity in the sale made by the trustee. All the terms and directions of the power contained in the deed of trust were observed. Nor was there any want of good faith and fair dealing in the trustee, or creditor, attending the sale. There was no oppression of the grantor, no advantage taken of his necessities. It appears very clearly that he was present, approving the sale, declaring to his unsecured creditors, who were making inquiries, that the whole transaction was fair and just. It may be that all sales under powers in deeds of trust, securities for debts, at which the creditor becomes the purchaser, should be closely watched, as should be sales by a sheriff, when the judgment creditor, for whose benefit they are made, becomes the purchaser. There is the opportunity for unfairness and oppression, from which the debtor is entitled to protection. But it is quite an error to suppose. that if, at either sale, the creditor becomes the purchaser, the purchase is voidable at the mere election of the debtor, as would be a purchase made by a mortgagee or trustee at his own sale. There is not the relation of trust and confidence, which exists as to trustee and *cestui que trust*, disabling the trustee from acquiring by purchase the trust estate, though he may not take advantage of the relation, and may pay an adequate price, nor is there, as when a mortgagee purchases at his own sale, the conflicting rights and interests of buyer and seller. The disability of either to purchase at his own sale, save subject to its vacation at the mere election of *cestui que trust*, or mortgagor, seasonably expressed, rests upon the broad ground that duty and interest must not be brought into conflict. The creditor secured by a deed of trust, owes to the debtor, as he owes to all with whom he may deal, fairness and good faith. It is also a duty not to take advantage of the power he may have over the trustee, and in directing the sale, to oppress the debtor, and not to avail himself of the power to obtain the property at a sacrifice. But he does not stand in such a relation that it is the policy of the law to disable him from purchasing at the sale by the trustee, and obtaining a title which will be free from impeachment, when the transaction is open, fair, and just. That he may be the purchaser, is often a sufficient reason for preferring the deed of trust to a direct mortgage. And that he has the ability of purchasing, often prevents a sacrifice of the property. It is always his interest to see that it brings a sum sufficient to pay his debt,

[Moberly v. Peek.]

and this affords some security to the debtor against loss by the sacrifices some times attendant upon compulsory sales. *Lynn v. Jones*, 6 Humph. 533 ; *Holmes v. Richards*, 18 How. 143 ; *Lucas v. Oliver*, 34 Ala. 626. There is no greater reason for disabling the creditor from purchasing at the sale made by the trustee, than there would be for disabling a mortgagor from purchasing under his own decree of foreclosure, or a judgment creditor from purchasing at a sale under his own execution. That each may purchase cannot be doubted.—1 Perry on Trusts, § 199 ; Freeman on Executions, § 292. The case of *Wade v. Harper*, 3 Yerger, 383, to which we are referred, may, on its peculiar facts, as was said by the same court in *Lynn v. Jones, supra*, have been correctly decided. It cannot be extended to sales under deeds of trust, when the creditor has no other power over the sale, than on default in the payment of the debt, to direct the trustee to execute the trusts. The lands were sold for their full value— there was no want of good faith in the trustee or creditor, and we hold the sale was not voidable at the mere election of the debtor.

The decree of the Chancellor must be reversed, and a decree here rendered dismissing the bill. The appellee must pay the costs in this court and in the Court of Chancery.